IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **PEGGY ANN SKINNER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-12-287-SPS |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of the Social** ) | |
| **Security Administration,**[1] ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

The claimant Peggy Ann Skinner requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 25, 1968, and was forty-two years old at the time of the administrative hearing. (Tr. 33). She completed the eleventh grade, attending special education classes. (Tr. 176). The claimant has worked as a stock clerk, cashier, housekeeper, and dishwasher, and alleges that she has been unable to work since August 18, 2008, due to severe anxiety and depression, problems with stealing/kleptomania, inability to read/write well, and inability to focus. (Tr. 43, 172-173).

## Procedural History

The claimant applied on September 15, 2008 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Michael A. Kirkpatrick determined the claimant was not disabled in a written opinion dated July 30, 2010. (Tr. 13-24). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. The ALJ

determined that the claimant's severe impairments consisted of borderline intellectual functioning; mood disorder; dysthymia vs. major depression, recurrent; bipolar II disorder, depress; post-traumatic stress disorder; and panic attacks. (Tr. 15). He further found that claimant had the RFC to perform a full range of work at all exertional levels, but that she had the additional nonexertional impairments of performing simple, unskilled tasks (but not detailed or complex tasks) which do not require interaction with the general public. (Tr. 18). The ALJ then found that the claimant was not disabled because she could return to her past relevant work as a housekeeper or dishwasher. (Tr. 23).

## Review

The claimant contends that the ALJ erred by: i) failing to find her degenerative disc disease as a severe impairment, ii) finding that she did not satisfy the criteria of Listing 12.05C, and iii) failing to perform a proper RFC assessment, and iv) improperly finding that she could return to her past relevant work. The Court finds that the ALJ *did* fail to properly determine whether the claimant satisfied the criteria of Listing 12.05C, and the decision of the Commissioner should therefore be reversed.

The claimant was evaluated by state consultative examiner Robert L. Spray, Jr., Ph.D. on November 25, 2008 and January 14, 1009. (Tr. 247-254). During the first appointment, Dr. Spray administered the Wechsler Adult Intelligence Scale-III (WAIS-3), the results of which indicated that claimant had a verbal IQ of 66, a performance IQ of 81, and a full scale IQ of 72, placing her overall in the borderline range but noting that her verbal comprehension index placed her in the mild mental retarded range. (Tr. 254).

Dr. Spray diagnosed the claimant with dysthymia v. major depression, recurrent, and panic disorder, along with borderline intellectual functioning (noting that her adaptive functioning is not consistent with a diagnosis of mental retardation). (Tr. 254). At the second examination, Dr. Spray diagnosed the claimant with bipolar II disorder, depressed, panic disorder, PTSD, and borderline intellectual functioning. (Tr. 249). His prognosis was that she was not expected to improve significantly within the next twelve months. (Tr. 249). He evaluated her adaptive functioning, stating that her level of adaptive functioning and work history were not consistent with a diagnosis of mental retardation and that she gave good effort and did not appear to be malingering or exaggerating. (Tr. 250).

     State reviewing physician Dr. Cynthia Kampschaefer completed a Psychiatric Review Technique and corresponding Mental Residual Functional Capacity Assessment. (Tr. 266-279). Dr. Kampschaefer found that the claimant's impairments caused her to experience moderate limitations in the areas of restrictions of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 276). In the section for documentation of factors pertaining to Listing 12.05, Dr. Kampschaefer checked the box indicating that the claimant met the initial "capsule definition" that the claimant's subaverage intellectual functioning manifested itself before the claimant turned 22 years old. (Tr. 270). Further, Dr. Kampschaefer noted in the Mental RFC Assessment that claimant was markedly limited in the following areas: i) ability to understand and remember detailed instructions; ii) ability to carry out detailed

instructions; and iii) ability to interact appropriately with the general public. (Tr. 262-263).

Although the claimant bears the burden of proof at step three to establish that she meets or equals the requirements for a listed impairment, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) [quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why claimant was not disabled at step three. *Id.* at 1009, *citing Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986).

At step three of the sequential evaluation, the ALJ determined that the claimant's severe impairment of borderline intellectual functioning did not meet section 12.05 of the Listing of Impairments because "the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (Tr. 18). His findings related to Listing 12.05C are wholly unsupported by both the record and his own findings at step two and step four. In order to satisfy section 12.05C, the claimant must first satisfy the diagnostic description included in the introductory paragraph which requires that the claimant possess "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i. e.*,

the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05.  This initial requirement is referred to as the "capsule definition."  *Peck v. Barnhart*, 214 Fed. Appx. 730, 736 (10th Cir. 2006) [unpublished opinion].  In addition to satisfying the capsule definition of mental retardation, the claimant must also satisfy two additional prongs in order to meet the requirements of Listing 12.05C: "a valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. pt. 404, subpt. P, app. 1 [emphasis added].

    As to the capsule definition applicable to the entirety of Listing 12.05, the ALJ wholly failed to make a finding as to whether the claimant satisfied the capsule definition.  In spite of the claimant's Disability Report indicating that she was in the special education program at her high school (Tr. 176), as well as her reports of the same to Dr. Spray (Tr. 252) and Dr. Kampschaefer's own checkmark indicating that the claimant met the capsule definition (Tr. 270), the Commissioner nevertheless argues that there is no evidence to support a finding of onset prior to age 22.  However, "[t]he Commissioner's argument ignores our ruling in *Clifton* where we held that we can only review ALJ decisions that make specific findings on the facts of the case.  If [the claimant] does not meet the capsule definition, then the ALJ must make that determination in the first instance." *Peck*, 214 Fed. App. at 736.  Moreover, if the ALJ disagreed with that particular portion of Dr. Kampschaefer's opinion, then he would have

been required to discuss his reasons for adopting some, but not all, of Dr. Kampschaefer's findings.  *See, e. g.*, *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others.  An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment.  So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.  We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination.").

Turning to the two prongs of section 12.05C, "'the purpose of  § 12.05C is to compensate a claimant with an IQ in the 60-70 range and a limitation of function that affects h[er] work.'"  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), *quoting Sird v. Chater*, 105 F.3d 401, 403 n.6 (8th Cir. 1997).  With respect to the requirements specifically comprising Listing 12.05C, the claimant clearly satisfies the first prong of the listing since her verbal IQ score fell below 70, *e. g.*, the claimant scored a verbal IQ of 66 on the WAIS-III.  (Tr. 254).  *See id*. § 12.00D(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, *e. g.*, where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.").

The second requirement of Listing 12.05C is that the claimant must have a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05C. The Tenth Circuit has adopted the view of the First and Eleventh Circuits that a "§ 12.05C limitation is significant if the claimant suffers from a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function." *Hinkle*, 132 F.3d at 1352. ("We conclude the analysis employed by the First and Eleventh Circuits is the better interpretation of what must be shown to satisfy the second prong of § 12.05C."), *citing Edwards v. Heckler*, 736 F.2d 625, 629-31 (11th Cir. 1984) and *Nieves v. Secretary of Health & Human Services*, 775 F.2d 12, 14 & n.7 (1st Cir. 1985). "[W]hether a claimant has a § 12.05C 'significant limitation' should 'closely parallel' the step two standard, and is to be made without consideration of whether the claimant can perform any gainful activity beyond the analysis as made at step two." *Hinkle*, 132 F.3d at 1352-53, *citing Fanning v. Bowen*, 827 F.2d 631, 634 (9th Cir. 1987) (if claimant meets the § 12.05C listing and the durational requirement, "he must be found disabled without consideration of his age, education, and work experience[.]") [internal citations omitted]. Here, the ALJ determined that claimant had the additional severe impairments of mood disorder; dysthymia vs. major depression, recurrent; bipolar II disorder, depressed; PTSD; and panic attacks. (Tr. 15). This was sufficient to satisfy the second prong. *See Peck*, 214 Fed. Appx. at 734 ("Based on the ALJ's findings [that the claimant had severe impairments that combined to significantly limit her ability to

perform basic work-related functions *and* was unable to perform her past relevant work], Peck meets the additional significant impairment requirement under Listing 12.05C."), *citing Hinkle*, 132 F.3d at 1352-1353 & n.4.  Thus, contrary to the ALJ's failure to analyze the claimant's impairments under Listing 12.05C, the claimant *did* provide some evidence that her impairment existed before the age of 22, and *both* that she had an IQ score in the range of 60-70 *and* a "mental impairment imposing an additional and significant work-related limitation."  The ALJ's findings at step three with regard to Listing 12.05C are therefore not supported by substantial evidence, and the decision of the Commissioner is REVERSED and REMANDED to the ALJ for further analysis as outlined above.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma